

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ESTEBAN MANZASNARAS-WENCES, | § | No. 08-23-00108-CR |
| Appellant, | § | Appeal from the |
| v. | § | 216th Judicial District Court |
| THE STATE OF TEXAS, | § | of Gillespie County, Texas |
| Appellee. | § | (TC# DC8126) |

## **OPINION**

On March 8, 2023, a jury found appellant Esteban Manzasnaras-Wences guilty of the first-degree felony offense of murder with a deadly weapon, *see* TEX. PENAL CODE ANN. § 19.02(b)(1), ultimately recommending a sentence of life in prison and the imposition of a $10,000 fine. The trial court rendered a final judgment of conviction consistent with that recommendation.

Appellant was convicted of murdering Jesus Herrera Resendez. On appeal, his sole contention is that the trial court abused its discretion during the guilt phase of trial by admitting evidence that a ten-year-old girl (the Girl) also sustained a gunshot wound during the commission of the offense.[1]  Finding no abuse of discretion, we will affirm the judgment of conviction.

---

[1] To protect the identity of the minor, we used generic descriptors for some of the participants.

## FACTUAL AND PROCEDURAL BACKGROUND

The homicide that resulted in this prosecution and appeal arose from an altercation following a family visit to the Pedernales River on Memorial Day weekend in 2021.[2] At the time, Appellant was an ex-boyfriend of the Girl's mother (Mother), and Mother was driving back from the river. Also in the vehicle were Resensdez, the Girl, the Girl's younger brother, and Mother's sister. Appellant was not in the vehicle but, according to multiple witnesses, he approached the vehicle when Mother pulled into the driveway before anyone had exited that vehicle. It is undisputed that Appellant fired multiple rounds into the vehicle, striking and killing the Resendez immediately and striking the Girl in her hip.

As the altercation unfolded at the vehicle, 911 dispatchers began receiving calls regarding the incident. The content of those calls was admitted into evidence through exhibits and testimony. Callers described a chaotic, confusing, and rapidly changing scene. One caller reported that a male adult was "beating the shit" out of someone. Multiple callers reported gunfire. Another caller reported that at least one adult or child had been shot. Two callers reported that the shooter—later identified as Appellant—had fled the scene in a gray sedan with a firearm in hand. When law enforcement asked a dispatcher for clarification as to the number of victims, the dispatcher twice responded that she was having difficulty ascertaining that information because the callers were distraught and "hysterical." The 911 dispatcher that answered the calls testified at trial and verified substance and timing of those calls.

---

[2] Pursuant to a docket-equalization order issued by the Supreme Court of Texas, *see* TEX. GOV'T CODE ANN. § 73.001, this appeal was transferred to our Court from Fourth Court of Appeals, and we apply its precedent to the extent any of its precedent conflicts with our own, *see* TEX. R. APP. P. 41.3. The background facts are taken from undisputed aspects of the record unless otherwise noted, *see id.* TEX. R. APP. P. 38.2(a)(1)(B), and include only facts and rulings necessary to dispose of the sole issue on appeal, *see* TEX. R. APP. P. 47.1.

The Girl, 12 years old at the time of trial, testified that she made what was possibly the first 911 call from the back seat of the car when she saw Appellant open the car door with a gun. She explained, however, that she was unable to complete her report because she dropped the phone when she "passed out" after sustaining the gunshot injury. She testified that she heard multiple shots fired before she passed out, that Appellant was the only one with a gun, that she "woke up" briefly, saw her brother performing CPR, and "woke up again to find [her]self in [her] mother's hands." She did not describe her mother's state of distress, the nature of her injuries, or the pain she suffered.

Fredericksburg patrol officer Luke Smith testified that when the 911 calls began coming in, he realized he was the officer nearest to the scene and proceeded to respond. He explained that while in transit, he recognized a car that matched the suspect's, pulled him over with the assistance of a deputy sheriff, and conducted a "felony take down." He then left the deputy to complete the arrest and proceeded to the scene of the crime. Smith testified that he was "the first officer on the scene." He confirmed that a video saved to a thumb drive was his bodycam video from the scene as he approached. Although the defense objected to any use of the bodycam video, the Court overruled the objection and allowed the State to show the jury the first three and a half minutes of that video, which reveal Smith approaching the scene to find three women in extreme distress near a vehicle and a child on a ground. While the woman with the Girl moved away to allow Smith to see the injury, the two other women were cradling Resendez and preventing Smith from seeing or examining him. Smith repeatedly asked the women to describe the injuries, but they continued crying and blocking his view. When he finally coaxed the women away from the vehicle, he saw Resendez, radioed dispatch, and requested two ambulances after reporting Resendez's gunshot

wound to the head and describing him as unresponsive. Defense then suspended play of the video; the jury did not see the remainder of the video until the sentencing phase of trial.

The remaining evidence of the Girl's injury, as admitted during the guilt-innocence phase of trial, corroborated the evidence already described. One neighbor described observing "a bunch of, like, fighting going on" before calling 911, to make her report. She did not mention the Girl's injury in her testimony. Another neighbor testified that she heard several "pops" before realizing shots had been fired and calling 911. She did not mention the Girl's injury in her testimony. A nearby fireworks vendor testified that he called 911 after watching "a man and a woman arguing and physically tussling behind a vehicle" and realizing that what he had mistaken for fireworks was in fact gunfire. He did not refer to the Girl's injury, as he said he was too "far away" to see exactly what was happening.

The Girl's mother testified that she "ran to [her] daughter" after trying to prevent Appellant from fleeing the scene; only then did she realize the Girl had been injured. She then explained that her daughter was transported to a hospital before "very long," while she and the other adults were escorted to a police station. The Girl's aunt testified—with respect to the Girl's injury—that she knew only that the Girl had sustained injury but knew no more than that because she was holding the victim "the whole time."

A Fredericksburg police officer testified that he recovered the firearm used in the commission of the crime when searching Appellant's vehicle. Later in the trial, an expert witness testified that the bullets removed from Resendez had been fired by that weapon.

Fredericksburg fireman Harvey Lansford testified as to his arrival of the scene and explained that there were two individuals that had sustained injury. He testified only as to the

4

injury to Resendez, explaining that the Girl was already being removed or had just been transported from the scene when he arrived.

A grand jury indicted the Appellant with murder with a deadly weapon, the case was then tried to jury. Before, during, and after trial, defense repeatedly objected to "any reference" to the Girl's injuries and recovery. Counsel argued that any reference to the injury would violate Rules 402, 403, and 404 of the Rules of Evidence. The jury returned a verdict of guilty before recommending a punishment of life in prison and the maximum fine. The court overruled all of Appellant's objections, denied a motion for new trial, and rendered a final judgment of conviction.

## STANDARD OF REVIEW AND APPLICABLE LAW

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). The trial court abuses its discretion when its decision lies outside the "zone of reasonable disagreement." *Martinez*, 327 S.W.3d at 736. Even so, because discretionary abuses in a trial court's evidentiary rulings are not of a constitutional dimension, any abuse "that does not affect substantial rights must be disregarded." *See* TEX. R. APP. P. 44.2(b); *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008). Under this standard, we will overturn the conviction only if we determine the evidentiary decision had a substantial and injurious effect or influence in determining the jury's verdict; we will not overturn a conviction "if we have fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but slight effect." *Taylor*, 268 S.W.3d at 592 & n.106.

DISCUSSION

Appellant contends that any evidence of the Girl's injury was inadmissible under Rules of Evidence 401, 402, 403, and 404.[3] In general, evidence is admissible only if relevant unless otherwise deemed inadmissible by constitution, statute, or rule. *See* TEX. R. EVID. 401, 402. Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "is of consequence in determining the action." *See id*. TEX. R. EVID. 401. That said, the trial court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of" "unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." *See id*. TEX. R. EVID. 403. Evidence of extraneous crimes, wrongs, or other acts are "not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," *see id*. TEX. R. EVID. 404(b)(1); however, that evidence may be admissible to prove "motive opportunity, intent preparation, plan, knowledge, identity, absence of mistake, or lack of accident., *see id*. TEX. R. EVID. (b)(2).

## A. Rules 401 and 402

The trial court admitted limited evidence of the Girl's injury during the guilt-innocence phase, and that evidence is relevant. The State bore the burden to prove, beyond all reasonable doubt, that Appellant committed this offense. TEX. PENAL CODE ANN. § 2.01. That requires proving that he—with intent to cause bodily injury—committed an acted clearly dangerous to human life, resulting in the death of the victim. *Id*. § 19.02(b)(2); *Cavazos v. State*, 382 S.W.3d

---

[3] At trial and again before this Court, Appellant does not consistently refer to the rules by name; however, it is clear from the language used that he was objecting under Rules 401–404 and renews his challenge on appeal under those same rules. *See* TEX. R. APP. P. 38.9.

377, 383 (Tex. Crim. App. 2012). In this case, the State also bore the burden of proving that Appellant used a deadly weapon in the commission of that offense.

The Girl was the only witness to testify at trial that was not directly involved in the confrontation in and around the occupied vehicle and that was able to see and hear everything that led up to the shooting. She testified that she saw Appellant approach the vehicle with the deadly weapon, recognized his intent, and called 911 for help. The jury, as the "ultimate arbiter" of the evidence, *see Woodfox v. State*, 742 S.W.2d 408, 410 (Tex. Crim. App. 1987) (en banc), was free to reject the Girl's testimony as to Appellant's unprovoked approach and his intent, but that does not make the evidence any less probative of the element of the offense. And while the State certainly could have stopped the direct examination before asking the Girl about what happened next—that she also sustained an injury—the jury would likely have been left wondering why the State did not facilitate the rest of the Girl's testimony or narrative. *Cf. Inthalangsy v. State*, 634 S.W.3d 749, 757 (Tex. Crim. App. 2021) ("A juror would naturally wonder what happened to [witness] . . . and why she did not testify about what happened to her."). The high court has disapproved of these kinds of omissions. *See id.*

The video that includes a brief image of the Girl lying on the ground is equally relevant. The fact that she suffered severe abdominal injury from the gunshot wound is probative of whether Appellant acted in a manner clearly dangerous to human life. Appellant, in his brief to this Court, complains that the video depicts the Girl "writhing" on the ground in pain. That characterization is not true to the three-and-a-half-minute excerpt shown to the jury. That excerpt reveals the Girl lying still on the ground—her injury barely visible—before her mom picks her up and cradles her.

Because the limited evidence of the Girl's injury speaks to multiple elements of the offense, we find Appellant's arguments regarding relevance unpersuasive.

### B. Rules 403 and 404

As we explained in a recent opinion, "Rule 403 does not allow the exclusion of evidence just because it is prejudicial to the defendant; all evidence that a defendant is guilty is prejudicial in this sense." *See Trevino v. State*, No. 08-23-00111-CR, 2024 WL 339117, at \*4 (Tex. App.— El Paso Jan. 29, 2024, no pet.) (mem. op., not designated for publication). "To fall within the scope of Rule 403, the risk must be of unfair prejudice." *Id.* (citing *Maldonado v. State*, 452 S.W.3d 898, 904 (Tex. App.—Texarkana 2014, no pet.)). "[U]nfair prejudice . . . speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Id.* (quoting *Manning v. State*, 114 S.W.3d 922, 928 (Tex. Crim. App. 2003), and citing *Old Chief v. United States*, 519 U.S. 172, 180 (1997)). "[T]he general Rule 403 balancing test consider[s]: (1) the degree of probative value; (2) the potential for the evidence to affect the jury in some irrational, indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence." *Proo v. State*, 587 S.W.3d 789, 817 (Tex. App.—San Antonio 2019, pet. ref'd) (quoting and citing *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006)). "In evaluating whether the probative value of photographs or video is substantially outweighed by the danger of unfair prejudice, [the court] may considers several factors, including: the number of exhibits offered, their gruesomeness, their detail, their size, whether they are black and white or color, whether they are close-up, and whether the body depicted is naked or clothed." *Jackson v. State*, No. 04-13-00911-CR, 2015 WL 505103, at \*2 (Tex. App.—San Antonio Feb. 4, 2015, aff'd as modified) (mem. op., not designated for publication) (quoting *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007)). The trial court may also consider any "other circumstances unique to the individual case." *Williams v. State*, 301 S.W.3d 675, 690 (Tex. Crim. App. 2009).

With respect to the videos and the Girl's testimony regarding her injury, these factors, taken together, weigh in favor of admissibility. We have already discussed the probative value of that evidence. Appellant argues that the State used evidence of the Girl's injury to portray him as a "scorned and hated man" and to inflame the jury. Yet Appellant provides no examples or legal authority to support that argument, and in fact the record indicates that the State exercised every means possible to limit the jury's exposure to the Girl's injury and any effect that exposure might have. Conclusory statements like Appellant's argument are not sufficient to demonstrate that the disputed evidence affected the jury in some irrational or indelible manner. *See, e.g.*, *Williams v. State*, No. 12-22-00107-CR, 2023 WL 3914277, at *5 (Tex. App.—Tyler June 8, 2023, pet. ref'd) (mem. op., not designated for publication) (rejecting argument regarding undue prejudice after explaining that Appellant "d[id] not make any additional argument or cite any authorities in support of his contention that crime scene photographs depicting a tearful person are categorically more prejudicial than probative, and [the court] ha[d] found none"). The State needed little time to develop and present the evidence: the entire trial spanned only a day and a half. Finally, with multiple eyewitnesses to the offense, the State might not, strictly speaking, have needed the evidence of the Girl's injury to prove its case. That said, the court's decision to admit the evidence lies within the "zone of reasonable disagreement," *Martinez*, 327 S.W.3d at 736, and therefore does not constitute an abuse of discretion.

### C. Harm

Finally, because our review of the record reviews no abuse of discretion or error in the trial court's admission of the limited evidence of the Girl's injury, and because Appellant has not briefed this Court on harm, we need not address any harm that might have resulted from such an abuse. *See* TEX. R. APP. P. 38.1(i) (outlining appellant's briefing requirements), 44.2(b) (requiring

9

opinions to be as brief as practicable); *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008) (describing appellant's burden of demonstrating harm when abuse or error is of non-constitutional dimension); *Guajardo v. Hitt*, 562 S.W.3d 768, 781 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd) (explaining briefing waiver).

## CONCLUSION

Having reviewed the record and found no abuse of discretion in the trial court's admission of the contested evidence, we affirm the judgment of conviction.


JEFF ALLEY, Chief Justice

March 28, 2024

Before Alley, C.J., Palafox and Soto, JJ.

(Do Not Publish)