

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-24-00096-CR

CEDRIC DESHUN ALEXANDER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 5th District Court
Bowie County, Texas
Trial Court No. 21F1013-005

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

A Bowie County jury convicted Cedric Deshun Alexander of engaging in organized criminal activity, a first-degree felony, and assessed a sentence of imprisonment for life and a $10,000.00 fine. *See* TEX. PENAL CODE ANN. § 71.02 (Supp.). On appeal, Alexander argues that the trial court erred by (1) admitting evidence of extraneous offenses, (2) failing to conduct a Rule 403 balancing test before admitting the extraneous offenses, (3) allowing the prosecutor to make inflammatory statements, and (4) allowing the State to reference the arrests and convictions of Alexander's alleged co-participants.[1]

We find that the trial court did not abuse its discretion by admitting the extraneous-offense evidence and that the trial court presumptively conducted a Rule 403 balancing test when admitting it. *See* TEX. R. EVID. 403. We also find that Alexander has failed to preserve his last two points of error for our review. As a result, we affirm the trial court's judgment.[2]

## I.      The Trial Court Did Not Abuse its Discretion by Admitting Extraneous Evidence

In his first point of error on appeal, Alexander argues that the trial court erred by admitting evidence of two extraneous murders. The State replies that the trial court properly exercised its discretion to allow the evidence because it was necessary to prove the elements of the offense. Because we agree with the State that the trial court did not abuse its discretion by finding that the extraneous offenses proved Alexander's intent to participate in a combination

---

[1]In cause numbers 06-24-00097-CR and 06-24-00098-CR, Alexander appeals two other convictions for engaging in organized criminal activity on the same grounds raised here.

[2]Alexander also argues that the cumulative effect of the alleged errors deprived him of a fair trial. Because we overrule Alexandar's four points of error, we also overrule his cumulative-error complaint.

2

that conspired to commit criminal activity, a required element of engaging in organized criminal activity, we overrule Alexander's first point of error.

### A. Factual and Procedural Background

A person commits the crime of engaging in organized criminal activity "if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, the person commits or conspires to commit . . . aggravated robbery, . . . burglary, . . . [or] aggravated assault." TEX. PENAL CODE ANN. § 71.02(a)(1). In this case, the State alleged that Alexander participated in a combination consisting of himself, Cornell Brown, Jr., Dariel Greenwood, and Courtney Williams, who collaborated in committing the offense of burglary of Ashton Jackson and Joseph Hawkins's habitation. In our appellate cause number 06-24-00097-CR, the State alleged that Alexander participated in a combination consisting of himself, Brown, Greenwood, Williams, Courtney Hope, Van Grissom, Calvin Gardner, Troyquez Daniels, Breuntre Miller, and Markeis Richardson, who collaborated in committing the offense of aggravated assault with a deadly weapon. In our appellate cause number 06-24-00098-CR, the State alleged that Alexander participated in a combination consisting of himself, Brown, Greenwood, Williams, and Grissom, who collaborated in committing the offense of aggravated robbery. Those cases were consolidated for trial.

During a pretrial conference, the State announced that it wished to reference a criminal street gang, known as the "Loyalty Cash Business," also known as LCB, because it believed that LCB had essentially "hired" Alexander and some of his co-participants to commit crimes. The trial court granted Alexander a motion in limine to prohibit the State from mentioning that

3

Alexander was a member of LCB until it had developed the evidence to prove it. However, the trial court clarified that the State could mention LCB in general.[3]

At another pretrial conference related to Alexander's motion in limine, the trial court announced that it would likely allow the State to introduce extraneous-offense evidence "for the purpose of showing continuity . . . related to the organized criminal activity" and "intent to engage in organized criminal activity." Alexander objected to the ruling "under 404(b) and 403," but the trial court reminded counsel that its ruling related only to a motion in limine and that it was not making any ruling on admissibility of the evidence. The trial court warned counsel, "Should some particular piece of evidence come in that you think needs to be objected upon any of those grounds, the Court certainly would expect you to make those objections."

Just before opening statements, Alexander asked for a running objection with regard to the "mentioning of the LCB" but made no objection regarding extraneous offenses. In its opening statement, the State asserted that Alexander, Brown, Williams, and Greenwood were all from Memphis, Tennessee, and came to Bowie County after being hired by LCB to commit a series of crimes on July 15, 2021. The State informed the jury that it would also hear evidence about a murder in December 2020, and another murder in September 2021, to show that "not only were all these gentlemen acting together on July 15, but they started in December 2020 and they continued until September of '21."

---

[3]Even where a motion in limine is granted, that motion "does not preserve error." *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003). "For error to be preserved with regard to the subject of a motion *in limine*, an objection must be made at the time the subject is raised during trial." *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008).

4

Alexander asserted during his opening statement that while the crimes had occurred, he was not the person who committed the crimes but "was just in the wrong place at the wrong time." Alexander also asserted that there would "be no evidence that he collaborated, that he acted in combination, that he encouraged, that he directed, that he insisted, [or] that he promoted" the burglary of a habitation, aggravated assault with a deadly weapon, or aggravated robbery.

At trial, after the State put on several witnesses in relation to the July 15 offenses. The State called Brown's wife, Starlar Brown. Starlar testified that she and Brown were both charged in the September 2021 murder of Keith McFadden, that Brown was also charged with the December 2020 murder of Jermane Bubba Aldridge, and that Brown and Alexander had committed the July 15 aggravated assault by shooting Joseph Hawkins. At that point, Alexander "renew[ed] [his] motion in limine . . . as far as mentioning of the extraneous . . . murder," but the trial court overruled the objection after the State explained that it was being admitted for the purpose of establishing "continuity evidence" showing that Alexander was a part of a combination. After the objection was overruled, Starlar testified that Alexander was also involved in the murders of McFadden and Aldridge.

Daniel Linn, an investigator with the Texarkana, Texas, Police Department (TTPD), testified about the LCB gang. Without objection, Linn testified that Aldridge was a member of

LCB who was accused of stealing money from the gang leader. According to Linn, LCB "hired some guys out of Memphis to come down and" "retaliate for that."[4]

Timothy Hardy testified that he was an LCB member. Without objection, Hardy testified about Aldridge and McFadden, their involvement in LCB, and their murders.

Tabitha Smith, an officer with the TTPD, testified about her investigation into Aldridge's murder. Alexander received a running objection to Smith's extraneous-offense evidence. According to Smith, cell phone records established that Alexander and Brown were on their cell phones at approximately the same time Aldridge was shot and that they were "coordinating" the murder.

Jason Haak testified about his investigation of McFadden's murder when he was an investigator with the Texarkana, Arkansas, Police Department and introduced video-surveillance footage showing the suspects, including Brown. Without objection, Haak testified that Brown split the $66,000.00 used to solicit McFadden's murder with Alexander.

**B.      Standard of Review**

"We review a trial court's decision to admit or exclude evidence for an abuse of discretion." *Flowers v. State*, 438 S.W.3d 96, 103 (Tex. App.—Texarkana 2014, pet. ref'd) (citing *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010)). "Abuse of discretion occurs only if the decision is 'so clearly wrong as to lie outside the zone within which reasonable people might disagree.'" *Id.* (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g)).

---

[4]Linn testified that he obtained cell phone data and had isolated calls between Alexander and Brown. Without objection, Linn testified about the July 15 cell phone data.

"We may not substitute our own decision for that of the trial court." *Id.* (citing *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)). "We will uphold an evidentiary ruling if it was correct on any theory of law applicable to the case." *Id.* (citing *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009)).

### C.    Analysis

Before delving into our analysis, we address the threshold question of preservation of error. *See* TEX. R. APP. P. 33.1. The record demonstrates that while the trial court denied Alexander's motion in limine with respect to extraneous offenses and that Alexander obtained an adverse ruling to Starlar's testimony, evidence of the extraneous offense came in without objection during Linn's, Hardy's, and Haak's testimony. Even so, it appears that the trial court granted several running objections, without specification of the grounds for the objections. Because the context of the record suggests that the parties and the trial court understood the contents of the unspecified objection to be one relating to the extraneous offenses, we will liberally read the record as one that preserved a complaint under Rule 404(b) of the Texas Rules of Evidence. *See* TEX. R. EVID. 404(b).

Rule 404(b) of the Texas Rules of Evidence states that "evidence of other crimes, wrongs, or acts is not admissible 'to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.'" *Davison v. State*, 602 S.W.3d 625, 651 (Tex. App.—Texarkana 2020, pet. ref'd) (quoting TEX. R. EVID. 404(b)(1)). "But it may 'be admissible for another purpose, such as proving . . . intent, preparation, plan, [or] . . . identity . . . .'" *Id.* (quoting TEX. R. EVID. 404(b)(2)). "The exceptions listed under

7

Rule 404(b) are neither mutually exclusive nor collectively exhaustive." *Id.* (quoting *De La Paz*, 279 S.W.3d at 343).

"Rule 404(b) is a rule of inclusion rather than exclusion." *Id.* (quoting *De La Paz*, 279 S.W.3d at 343). "The rule excludes only that evidence that is offered (or will be used) solely for the purpose of proving bad character and hence conduct in conformity with that bad character." *Id.* (quoting *De La Paz*, 279 S.W.3d at 343). "Whether extraneous offense evidence has relevance apart from character conformity . . . is a question for the trial court." *Id.* (quoting *De La Paz*, 279 S.W.3d at 343).

A person engages in organized criminal activity "if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination[,] . . . [he] commits" one of several enumerated offenses, including burglary of a habitation, aggravated robbery, and aggravated assault with a deadly weapon. TEX. PENAL CODE ANN. § 71.02(a). Because it is a necessary element, the State has the burden of proving the combination. *Hart v. State*, 89 S.W.3d 61, 63 (Tex. Crim. App. 2002). A "[c]ombination" requires "three or more persons who collaborate in carrying on criminal activities." TEX. PENAL CODE ANN. § 71.01(a) (Supp.). The Texas Court of Criminal Appeals has construed this language as requiring a "continuing course of criminal activities." *Nguyen v. State*, 1 S.W.3d 694, 697 (Tex. Crim. App. 1999). Accordingly, the State must prove (1) that the defendant intended to establish, maintain, or participate in the profits of a combination, and (2) that the members of the combination intended "to work together in a continuing course of criminal activity." *Id.*; *see Hart*, 89 S.W.3d at 63; *Dowdle v. State*, 11 S.W.3d 233, 236 (Tex. Crim. App. 2000).

8

To satisfy the continuity requirement, "[t]he combination's members must be more than temporarily organized to engage in a single criminal episode." *Alfaro v. State*, 616 S.W.3d 923, 929 (Tex. App.—Houston [14th Dist.] 2021, no pet.). "Proof of an intent to participate in a criminal combination must extend beyond a single criminal episode, ad hoc effort, or goal, regardless of whether multiple laws were broken within the confines of that episode or effort." *Id.* "Evidence of multiple criminal violations alone does not permit the inference that the members of the group intended to continue working together beyond the completion of an episode or achievement of a goal." *Id.* at 929–30. "Evidence must be offered that allows a jury to infer that the group intended to continue engaging in illegality over a period of time." *Id.* "Similar methods of operation[,] together with joint activities and relationships[,] support the finding of a single conspiracy." *McGee v. State*, 909 S.W.2d 516, 518 (Tex. App.—Tyler 1995, pet. ref'd) (quoting *Caddell v. State*, 865 S.W.2d 489, 492 (Tex. App.—Tyler 1993, no pet.).

Rule 404(b) excludes only that evidence offered solely for the purpose of proving bad character and conduct in conformity with that character. TEX. R. EVID. 404(b). Here, the record shows that the extraneous offenses were offered for purposes other than character conformity. The indicted offenses all occurred on or about July 15, 2021, but the State must bring forth sufficient evidence to allow "a jury to infer that the group intended to continue engaging in illegality over a period of time." *Alfaro*, 616 S.W.3d at 930. Accordingly, the State sought to show that LCB used similar methods of operation by soliciting Alexander and his Memphis co-participants to commit joint crimes. The State sought to prove the relationships linking Alexander to the LCB crimes to support the jury's finding of a single conspiracy. Accordingly,

as the trial court noted, the State offered the evidence to prove the element of combination and the collaboration in carrying on criminal activities. *See Jackson v. State*, 314 S.W.3d 118, 127 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (finding that specific evidence of prior offenses can be probative of the defendant's intent to participate in organized criminal activity provided that the evidence shows the defendant was involved in the prior offenses). Moreover, the defense opened the door to such evidence by voicing the theory that Alexander "was just in the wrong place at the wrong time" during opening statements. *See Dabney v. State*, 492 S.W.3d 309, 315, 317 (Tex. Crim. App. 2016); *De La Paz v. State*, 279 S.W.3d 336, 346–47 (Tex. Crim. App. 2009).

We find that the trial court did not abuse its discretion in finding that the extraneous offenses were offered for a purpose other than character conformity. As a result, we conclude that the trial court did not abuse its discretion in admitting them.

## II. We Presume the Trial Court Conducted a Rule 403 Balancing Test

Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of," inter alia, "unfair prejudice." TEX. R. EVID. 403; *see Montgomery v. State*, 810 S.W.2d 372, 377 (Tex. Crim. App. 1991) (op. on reh'g). Upon a proper objection, the trial court is required to conduct a Rule 403 balancing test to determine whether the evidence should be excluded. *Williams v. State*, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997).

In his second point of error, Alexander argues that the trial court failed to conduct a Rule 403 balancing test for the extraneous-offense evidence it admitted. However, the trial court

is not required to conduct a formal Rule 403 hearing or announce that it is conducting the balancing test, and it "is not required to place the results of its balancing test on the record." *Colvin v. State*, 54 S.W.3d 82, 85 (Tex. App.—Texarkana 2001, no pet.) (citing *Williams*, 958 S.W.2d at 195). "Rather, the trial court is presumed to engage in the required balancing test once a party objects on the ground of Rule 403 and the trial court rules on the objection, unless the record indicates otherwise." *Id.*; *see Williams*, 958 S.W.2d at 195–96; *Maldonado v. State*, 452 S.W.3d 898, 906 (Tex. App.—Texarkana 2014, no pet.). For that reason, where, as here, "nothing in the record shows the trial judge did not perform the balancing test, we have found no error when the judge simply listened to the defendant's objections, then overruled them." *Rojas v. State*, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998).

By overruling Alexander's Rule 403 objection, the trial court presumably conducted the Rule 403 balancing test. As a result, we overrule Alexander's complaint about the lack of a Rule 403 balancing test.[5]

## III.    Alexander Failed to Preserve His Last Two Points of Error

Alexander chose to testify in his defense. In his remaining points of error, Alexander complains of the following: (1) the prosecutor's statements made during cross-examination of

---

[5]Alexander does not argue in his brief that the trial court erred by determining that the Rule 403 balancing test favored admission of the extraneous-offense evidence. As a result, the brief contains no merits discussion on the issue and fails to include any analysis of the factors considered in a Rule 403 determination as specified in *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). We have previously stated that a "bare-bones complaint" arguing that the trial court abused its discretion in admitting evidence under Rule 403 coupled only with a "discussion of the legal requirements for the exclusion of evidence pursuant to Rule 403" is insufficient to present a point of error for review. *Jackson v. State*, 424 S.W.3d 140, 155 (Tex. App.—Texarkana 2014, pet. ref'd). "Because we are under no obligation to make [Alexander's] arguments for him," we find that his brief "present[s] nothing for our review" with respect to a Rule 403 complaint. *Id.* (citing TEX. R. APP. P. 38.1(i); *Lucio v. State*, 351 S.W.3d 878, 896–97 (Tex. Crim. App. 2011); *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008)).

other witnesses, which signaled to the jury that Alexander's "co-participant[s] had [already] been convicted of" crimes; (2) use of inflammatory language during Alexander's cross-examination, which allegedly "accused him of belittling the jury's intelligence," and (3) questioning by the prosecutor about an investigation of "a hit that [Alexander] supposedly put out on two members of the police department." The State correctly responds by arguing that Alexander has failed to preserve these complaints.

To preserve a complaint for review, a party must first present the trial court with a timely objection stating the specific grounds for the desired ruling if not apparent from the context. TEX. R. APP. P. 33.1(a)(1). As for the State's questioning of other witnesses, Alexander did not object to any question or statement about the convictions of his co-participants and has thus failed to preserve his appellate complaint.

Next, "the defendant must object and pursue his objection to an adverse ruling." *Hernandez v. State*, 538 S.W.3d 619, 622 (Tex. Crim. App. 2018). "If he fails to pursue his objection to an adverse ruling, he forfeits his right to complain on appeal . . . ." *Id.* Here, the only objection lodged to the State's use of language suggesting that Alexander belittled the jury was sustained. Because there was no adverse ruling on the matter, there is nothing for us to review.

Lastly, to avoid forfeiture, a "point of error on appeal must comport with the objection made at trial." *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). Alexander himself raised the issue of whether he "killed a police officer or something like that" and did not object when the prosecutor asked whether that was in reference to an investigation about "a hit"

12

solicited against police officers. Later, when the State asked about statements that Alexander's cellmate had made about the alleged "hit," Alexander objected on the grounds of hearsay, but he raises no hearsay complaint on appeal. As a result, his point of error on appeal does not comport with his objection at trial.

Because we find that Alexander failed to preserve his complaints for our review, we overrule them.

## IV.    Conclusion

We affirm the trial court's judgment.


                                        Scott E. Stevens
                                        Chief Justice


Date Submitted:      March 31, 2025
Date Decided:        April 1, 2025

Do Not Publish